UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

In re:                                    :
                                          :  Chapter 11
BRITESTARR HOMES, INC.,                   :
                                          :  Bankruptcy Case No. 02-50811 (AHWS)
                                          :
         Debtor.                          :

**DEBTOR'S BRIEF IN OPPOSITION TO THE CITY OF
NEW YORK'S MOTION FOR LEAVE TO FILE AN APPEAL OF AN
INTERLOCUTORY ORDER AND FOR A STAY PENDING APPEAL**

Britestarr Homes, Inc. (the "Debtor"), the debtor and debtor-in-possession, by its attorneys, Stroock & Stroock & Lavan LLP, submits this opposition brief to the New York City Department of Finance's (the "City") motion pursuant to 28 U.S.C. 158 (a)(3), Fed. R. Bankr. P. 8003 and Fed. R. Bankr. P. 8005 for leave to appeal an interlocutory order of the bankruptcy court and for a stay pending appeal.

**PRELIMINARY STATEMENT**

To obtain leave to appeal, the City had the burden to demonstrate that (1) the order appealed from involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. The City, however, has failed to establish that any of these factors are present in this case. Here, the bankruptcy court's decision to hear the Debtor's objection to the City's tax claim, under 11 U.S.C. § 505, was based solely upon the unique facts of this case and the need to allow for an orderly administration of this bankruptcy case, not a question of law.



While the City readily concedes that the bankruptcy court's power under § 505 is a matter of discretion, it argues that a New York state court is a better forum to adjudicate the Debtor's tax objection. The bankruptcy court, rejecting this argument, found that "the City's claim is large, and it is very important to the administration of the underlying case," and held that "the exercise of jurisdiction . . . will be in the best interest of creditors and the debtor, and it will also lead to a more orderly administration of this case." Attached as Exhibit A is a copy of the bankruptcy court's November 16, 2004 Transcript and Order at 18.

The bankruptcy court also stated that it was exercising its discretion to hear the Debtor's objection to the City's claim based upon the facts of this case. Id. Thus, the City cannot demonstrate that there is a controlling issue of law at stake in this appeal. Finally, an appeal from the bankruptcy court's order will not advance the termination of this litigation because obtaining a prompt resolution to the City's claim is essential for the viability of the parties' bankruptcy plan. Accordingly, the City's motion for leave to appeal should be denied.

The City's request for a stay pending appeal should also be denied. The only justification that the City is able to articulate in support of its request for a stay pending appeal is that it will incur further litigation costs. This argument, however, is not a legitimate justification for a court to issue a stay pending appeal. Moreover, the Debtor and its creditors will be adversely affected by a stay in this case because the City's objection must be resolved by May 27, 2005 to effectuate the reorganization option under the Debtor's chapter 11 plan (or there will be a liquidation sale).

## BACKGROUND

The Debtor's principal asset is a parcel of undeveloped real property located at 400 Oak Point Avenue in the Bronx, New York (the "Oak Point Property" or the "Property"). On May 21, 2002 (the "Petition Date"), the Debtor filed with the bankruptcy court a voluntary

-2-

petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continued to operate its business and manage its property as a debtor-in-possession under Sections 1107(a) and 1108 of the Bankruptcy Code. On March 21, 2003, the United States Trustee appointed an Official Committee of Unsecured Creditors for the Debtor. No trustee or examiner has been appointed in the Debtor's Bankruptcy Case.

By order dated June 29, 2004, the Bankruptcy Court for the District of Connecticut confirmed the Debtor's Second Amended Plan of Reorganization (the "Plan").

## STATEMENT OF FACTS

From 1978 to 1982, during which time the Oak Point Property was owned by the Consolidated Rail Corporation (Conrail), the City of New York, acting through its agent, Lee-Bin Corporation, leased the Oak Point Property and dumped approximately 265,000 cubic yards of construction and demolition debris thereon, creating uneven piles of such debris on the Property ranging up to 20 feet above grade.

Shortly thereafter, the City of New York terminated its lease of the Oak Point Property and thereafter, in 1987, sought to reclassify the Oak Point Property as non-railroad property and assess Conrail for property tax, proposing that the value of the property be set by agreement at $75,000. Conrail rejected that proposal, claiming, among other things, that the value of the Property was seriously impaired by the presence of the construction and demolition debris that the City had dumped there.

In September 1988, the Debtor purchased the Oak Point Property from Conrail for $3,167,000. Although the City was aware that the Debtor had purchased the Property, a non-railroad and non-utility entity, the City continued to include the Oak Point Property in its assessment roll for "real estate of utility corporations," or the REUC roll, rather than the assessment roll for "ordinary real estate," or ORE roll. The City's failure to properly maintain

the Property in the correct assessment roll continued for the entire 14-year period from the date of the purchase of the Oak Point Property by the Debtor until just recently. It was not until the publication of the 2003/2004 final assessment roll (on or about May 25, 2003) that the City finally transferred the Oak Point Property to the ORE roll. The Debtor, by appropriate proceedings, has challenged the 2003/2004 assessment of the Oak Point Property. In addition, during the time that the Oak Point Property was improperly maintained in the REUC roll, it was maintained under the heading "Communications property," a purpose for which the Oak Point Property has never been used. Within the "Communications" section of the REUC roll, it was listed under the heading "CSX Company."

In December, 1988, Oak Point Associates, Inc. began accepting construction and demolition debris at the Oak Point Property on the premise that such material would be processed, recyclable materials contained therein would be recycled, and the balance of the material would be disposed of off-site.

Contrary to the premise on which such debris was accepted at the Oak Point Property, processing of the debris did not proceed according to permit and none of the processed material was moved off-site. Oak Point Associates, Inc. continued to accept construction and demolition debris at the Oak Point Property until August 1989, when the facility was closed to new material by the New York State Department of Environmental Conservation ("DEC") due to the Debtor's failure to conduct recycling operations as permitted or to move processed material off-site.

On March 4, 1995, after a hearing and decision by an Administrative Law Judge ("ALJ"), the Commissioner of the DEC issued an order regarding the Oak Point Property, finding the Debtor and other respondents in violation of the New York State Environmental Conservation Law, imposing civil penalties against the respondents, and directing that the

respondents submit an approvable site investigation plan and remediate the site under a plan to be approved by the DEC. The ALJ concluded that the Oak Point Property would "not likely be sold unless remediation occurs first." No remediation has occurred and the DEC has filed a claim in this Bankruptcy case in the amount of approximately $17.7 million, of which $15.5 million represents the DEC's estimate of the cost of removal of the solid waste at the Oak Point Property that had been accepted while it was owned by the Debtor. Although not addressed in the ALJ's decision or the Commissioner's order, remediation of the Oak Point Property could cost substantially more than the DEC's claim if the debris dumped there by the City of New York must also be removed.

In December 1998, ABB Equity Ventures, Inc. ("ABB") entered into a purchase option agreement for the Oak Point Property as the first step in efforts to develop a power generation facility. ABB never exercised that option, and despite extensive marketing efforts conducted by CB Richard Ellis and Cushman & Wakefield over a ten-year period, no firm purchase offer was ever received for the Oak Point Property.

**PROCEDURAL HISTORY**

On May 21, 2002, the Debtor filed with the bankruptcy court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, and by order dated June 29, 2004, the Bankruptcy Court for the District of Connecticut confirmed the Plan. Attached as Exhibit B is a copy of the Plan. Furthermore, the City never objected to the Plan.

The claims register in this Bankruptcy Case reflects: (i) a proof of claim filed by the City on or about November 7, 2002 and docketed as claim number 4, asserting a secured claim of $10,379,392.70 plus interest as well as a "proof of administrative claim" in the amount of $59,310.85 plus additional interest ("Claim 4"), (ii) a proof of claim filed by the City on or about November 15, 2002 and docketed as claim number 7, asserting a secured claim of

$10,379,392.70 plus interest ("Claim 7"), and (iii) a proof of administrative claim filed by the City on or about November 15, 2002 and docketed as claim number 8, asserting an administrative claim in the amount of $59,310.85 plus additional interest ("Claim 8" and collectively with Claims 4 and 7, the "City Tax Claim").

The Plan specifically stated that if the City and the Debtor were unable to settle the City Tax Claim then the bankruptcy court would adjudicate the City's claim. The Plan provided:

> Should the parties be unable to resolve the City's tax claim consensually, the Debtor, through its special counsel Stroock & Stroock & Lavan will commence an action against the City pursuant to 11 U.S.C. § 505 . . . See Plan at 10.

The Plan further retained bankruptcy court jurisdiction:

> To adjudicate and determine any cause of action provided for under this Plan or the Confirmation Order including, without limitation, the Post Confirmation Litigation, and any and all claims under § 505 of the Bankruptcy Code. See Plan at 28 and 29.

The parties, however, were never able to resolve the City Tax Claim.

On August 20, 2004, the Debtor filed an objection to the City Tax Claim ("Objection"). The Debtor's Objection was made pursuant to sections 502(b)(3) and 505 of the Bankruptcy Code and Bankruptcy Rules 3003 and 3007, seeking to: (i) disallow in full and expunge the City Tax Claim, or (ii) in the alternative (A) reduce the amount of the Debtor's liability in respect of the City Tax Claim to the amount for which the Debtor would be liable had the Oak Point Property been properly and accurately assessed during the period of time that the Debtor has owned it, and (B) to the extent that the City Tax Claim is otherwise allowed, limit the allowed claim amount to the value of the estate's interest in the Oak Point Property pursuant to section 502(b)(3) of the Bankruptcy Code.

On October 6, 2004, the City filed a response to the Debtor's Objection ("Response"), requesting that the bankruptcy court use its discretion and abstain from hearing the Objection.

On October 13, 2004, the bankruptcy court conducted an oral argument on the Objection. At the hearing, the City raised the issue of abstention with the bankruptcy court. The bankruptcy court, however, decided based upon the factual issues in the case that it would not abstain from hearing the Debtor's Objection, and would conduct an evidentiary hearing to resolve the Objection.

On November 16, 2004, the bankruptcy court held a further hearing, as the recording equipment had malfunctioned at the previous hearing, leaving no transcript. The bankruptcy court reaffirmed its prior order and held that it would not to abstain from hearing the objection to the City's Tax Claim. Specifically, the bankruptcy court found that "the exercise of jurisdiction . . . will be in the best interest of creditors and the debtor, and it will also lead to a more orderly administration of this case." See Exhibit A at 18. The bankruptcy court also denied the City's request for a stay pending appeal.

The bankruptcy court has approved a pre-trial discovery schedule, with all discovery to be completed by February 15, 2005, and has set a trial date of March 2, 2005.

## STATEMENT OF ISSUES ON APPEAL AND RELIEF SOUGHT

Whether the bankruptcy court abused its discretion when it decided to hear the Debtor's objection to the City's tax claim, under 11 U.S.C. § 505 and 502(b)(3), after finding that: (1) the City's claim is large, and it is very important to the administration of the underlying case, and (2) that the exercise of jurisdiction will be in the best interest of creditors and the Debtor, and it will also lead to a more orderly administration of this case.

The Debtor requests that this Court deny the City's motion for leave to appeal and also deny its request for a stay pending appeal.

## ARGUMENT

### I

### THE CITY'S MOTION FOR LEAVE TO APPEAL AN INTERLOCUTORY ORDER SHOULD BE DENIED BECAUSE THE CITY CANNOT MEET THE REQUIREMENTS UNDER 28 U.S.C. § 158

The City has failed to demonstrate that an interlocutory appeal is proper in this case. Here, the bankruptcy court based its decision not to abstain from hearing the Debtor's Objection based upon the unique facts of this case and the need to efficiently administer this bankruptcy case, which it was entitled to do under § 505.

To determine when a grant of leave to appeal an interlocutory order is proper, courts in this Circuit have adopted the standards pursuant to which courts of appeals may entertain interlocutory appeals from district courts. In re AroChem Corp., 198 B.R. 425, 427 (D. Conn. 1996); IBI Security Service, Inc. v. National Westminster Bank USA, 174 B.R. 664, 669 (E.D.N.Y. 1994); In re Johns-Manville Corp., 45 B.R. 833, 835 (S.D.N.Y. 1984). Leave to appeal an interlocutory order may be granted when (1) the order appealed from involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). In addition, "exceptional circumstances" must exist that warrant an interlocutory appeal. Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978); AroChem Corp., 198 B.R. at 427.

Exercise of discretion under 11 U.S.C. § 505 involves no controlling questions of law. The bankruptcy court based its decision to hear the Objection solely upon the factual issues before it. In fact, in its current motion, the City is unable to identify a single issue of law that is

disputed by the parties. Instead, it simply takes issue with the way the bankruptcy court analyzed the facts to reach its decision not to abstain under 11 U.S.C. § 505. See Link v. Mercedes Benz of North America, Inc., 550 F.2d 860, 863 (3d Cir.), cert. denied, 431 U.S. 933 (1977) ("Notwithstanding the characterization of the issue on appeal, the issues on this appeal are issues of fact, not law, and as such are not reviewable in an interlocutory appeal"). Thus, the bankruptcy court's application of the facts under 11 U.S.C. § 505 is not reviewable.

The City also readily concedes that the bankruptcy court had discretionary authority under 505 to either hear the Objection or abstain. See the City's Moving Brief at 11. Here, the bankruptcy court outlined several reasons for its decision to hear this case. In fact, the bankruptcy court properly reasoned, "the City's claim is large, and it is very important to the administration of the underlying case." Decision at 18. Accordingly, the bankruptcy court did not abuse its discretion. See DiRienzo v. Philip Services Corp., 294 F.3d 21, 27 (2d Cir. 2002) (internal quotation marks and citation omitted) ("a district court abuses its discretion when (1) its decision rests on an error of law ... or a clearly erroneous factual finding, or (2) the decision – though not necessarily the product of legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions"); Alli-Balogun v. United States, 281 F.3d 362, 367-68 (2d Cir. 2002).

Moreover, there are no "exceptional circumstances" that require this Court to hear the matter. This is a straightforward valuation case that the bankruptcy court is adequately equipped to handle. Although the City argues that this case should be resolved in a New York state court, Congress gave the bankruptcy courts the power under § 505 to hear tax claims. Here, the bankruptcy court decided based upon the facts of this case that it needed to hear the Objection in order to properly administer this bankruptcy case.

The case of In re Bell Fuel Corp., NO. 89-766, 1989 WL 159393 (E.D. Pa. Dec 29 1989) is instructive on this point. In Bell Fuel, the Commonwealth of Pennsylvania sought to appeal the decision of the bankruptcy court when it decided to determine the validity and amount of the tax claim, contending that the matter had been adjudicated in a state court proceeding, thereby preventing the bankruptcy court from re-deciding the issue, pursuant to 11 U.S.C. § 505(a)(2)(A). The district court, however, denied the Commonwealth's motion for leave to file an interlocutory appeal because it held that:

> "the Commonwealth's tax priority claim may be upheld in its entirety thereby mooting the necessity for an appeal. The bankruptcy court may reach its decision based entirely upon the state court proceedings. In any event, at some point, the bankruptcy court will have to decide the validity and amount of the Commonwealth's tax priority claim. Until then, it <u>is premature for the district court to review, on an interlocutory appeal, the decision of the bankruptcy court as to the procedure it will utilize to make its determination</u>." In re Bell Fuel Corp., 1989 WL 159393 at *1. (emphasis added)

Just as the district court did in Bell Fuel, this Court should also deny the City's motion for leave to appeal because it is premature.[1]

Furthermore, a grant of leave to appeal at this stage would not only fail to materially advance the termination of the litigation but would have the opposite affect. Lack of a timely hearing and decision would prejudice the Debtor and its creditors by destroying the ability

---

[1] The City tries to label the bankruptcy court's decision as unprecedented, but the most it can say is that no reported appellate decision in this Circuit has upheld a bankruptcy court's decision to hear a tax dispute. This is not surprising given the small number of reported section 505 decisions within this Circuit, and tellingly, the City also cannot point to any case in this Circuit where the bankruptcy court's decision to hear the dispute was <u>reversed</u> by an appellate court. On the subject of precedent, it cannot deny that bankruptcy courts in this Circuit have heard tax disputes. Our own research points to two reported decisions, In re D'Alessio, 181 B.R. 756 (Bankr. S.D.N.Y. 1995) and In re 499 W. Warren St. Assocs., L.P., 143 B.R. 326 (Bankr. N.D.N.Y. 1992). Each of these cases was a chapter 7 liquidation rather than a chapter 11 reorganization, and in D'Alessio the Court heard the tax issue even though there would be no distribution to creditors in the chapter 7 case. Id., 181 B.R. at 760-61.

to maximize recovery under the plan. The Debtor has numerous unsecured creditors, and the effectuation of the reorganization option under the Plan is in the interest of all parties.

It is also disingenuous that the City even requested the bankruptcy court to abstain from hearing the Objection because the Plan, which the City never objected to, specifically provided that if the parties were unable to resolve the City's claim, then the bankruptcy court would conduct a hearing pursuant to 11 U.S.C. § 505. See Plan at 10. Therefore, the City has already consented to the bankruptcy court hearing the Objection, and cannot now seek to have this Court circumvent its contractual obligations.

In sum, the bankruptcy court based its decision to hear the Objection upon the factual showing that it was in the best position to resolve this matter. Therefore, because there are no questions of law at issue in this case and any appeal would hinder the resolution of the bankruptcy case, this Court should deny the City's motion for leave to appeal the bankruptcy court's interlocutory order.

II

**THE BANKRUPTCY COURT PROPERLY DECIDED TO HEAR THE DEBTOR'S OBJECTION TO THE CITY'S TAX CLAIM PURSUANT TO 11 U.S.C. § 505**

Much of the City's motion goes to the merits of what it wishes to argue on appeal—whether the bankruptcy court abused its discretion in making its interlocutory determination to hear the Objection. The City puts the cart before the horse, arguing the merits to distract attention from its inability to meet the threshold standard for obtaining leave to appeal. Indeed, its focus on the merits of abstention only highlights the inherently factual nature of the bankruptcy court's determination and the lack of any utility to an appeal in advancing ultimate termination of the litigation.

Section 505(a) of the Bankruptcy Code provides that the bankruptcy court may "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." This provision protects the interests of both the debtor and creditors by (i) protecting the creditor body "from the dissipation of an estate's assets which could result if creditors were bound by a tax judgment which a debtor, due to its ailing financial condition, failed to contest," and (ii) affording "a forum for the ready determination of the legality or amount of tax claims, *which determination, if left to other proceedings, might delay conclusion of the bankruptcy estate.*" In re D'Alessio, 181 B.R. 756, 760 (Bankr. S.D.N.Y. 1995) (quotations and citations omitted and emphasis added); see also In re Shapiro, 188 B.R. 140, 143-44 (Bankr. E.D. Pa. 1995).

The City makes an argument unrelated to the traditional abstention factors that is easily disposed of, asserting that the bankruptcy court may not revisit tax liability for years in which the statute of limitations under state law has run prior to the commencement of the bankruptcy case. As pointed out in the proceedings below, this position is directly at odds with settled precedent in the Second Circuit. See In re New Haven Projects LLC, 225 F.3d 283, 286 (2d Cir. 2000) (section 505 "empowers a bankruptcy court to redetermine the amount of a debtor's tax liability even when a debtor has failed to comply with state law procedures for challenging such liabilities, including applicable state law statutes of limitations"); 499 W. Warren St., 143 B.R. at 329; see also In re Piper Aircraft Corp., 171 B.R. 415, 418 (Bankr. S.D. Fla. 1994).

In deciding whether to exercise its discretion to abstain from hearing a tax dispute under 11 U.S.C. §505, the bankruptcy court considers:

> (1) the complexity of the tax issue, (2) the need to expeditiously administer the bankruptcy case, (3) the burden on the Bankruptcy Court's docket, (4) the length of time necessary to conduct a hearing and render a decision thereafter, (5) the asset and liability structure of the debtor, and (5) potential prejudice to the debtor, the taxing authority and creditors.

New Haven Projects, 225 F.3d at 289; D'Alessio, 181 B.R. at 759-60. As the bankruptcy court correctly determined, these factors overwhelmingly weigh in favor of hearing the Objection.

Complexity of Tax Issue: This is primarily a valuation dispute, which the bankruptcy court is well equipped to decide. A bankruptcy court is frequently called upon to decide issues of valuation (for example, in valuing collateral for plan or adequate protection purposes), and no special expertise of a specialized tribunal is necessary to determine the issues raised in the Objection. Compare 499 W. Warren St. Assocs., 143 B.R. at 329 ("complexity of the tax issues involved would appear to be relatively uncomplicated, as the debtor is a single asset entity and is simply challenging the underlying valuation of its property for tax purposes").

In this regard, the City's warning of inconsistent assessments is misplaced. The bankruptcy court will apply the same substantive analysis as a state court, see In re Custom Distribution Servs. Inc., 224 F.3d 235, 245-46 (3d Cir. 2000) (applying tax law of New Jersey to determine proper valuation of real property for purposes of Section 505 objection); In re Chipman-Union, Inc., 285 B.R. 752, 755 (Bankr. M.D. Ga. 2002) (court looked to substantive law of Georgia, the state in which the real property was located, to determine the value of the debtor's property for purposes of determining the proper tax amount), and its ruling will not be binding precedent in other state court tax certiorari proceedings. This is not a case like In re Metromedia, Inc., 299 B.R. 251 (Bankr. S.D.N.Y. 2003), where the debtors asked the court to re-assess taxes from twelve different jurisdictions at a common trial using common methodology. Under those circumstances, the court was properly concerned with uniformity of assessment as it was being asked to disregard each jurisdiction's particular assessment methods in favor of a

common approach. There is no such concern here. Other than conclusory statements that tax certiori law is "complex," "specialized" and "fraught with nuances," the City does not identify how uniformity of assessment is at issue. Indeed, the City's position would seem to leave no circumstance in which it would be appropriate for a bankruptcy court to determine a tax liability, a result clearly at odds with the language of Section 505 and the cases construing it.

<u>Need to Expeditiously Administer the Bankruptcy Case</u>: The Debtor's Plan, confirmed by order of the bankruptcy court dated June 29, 2004, contemplates two possible outcomes: a rehabilitation or a liquidation. In order for there to be a rehabilitation and continuance of the Debtor as a going concern, with recovery to creditors maximized, several issues, including this objection, must be resolved by May 27, 2005 (270 days following the Effective Date of the plan, which occurred on August 30, 2004). See Plan, § 7.4. Absent satisfaction or waiver of such conditions, the Oak Point Property will be sold and any proceeds distributed in accordance with the Bankruptcy Code priority scheme. See id. This timetable is simply not achievable in a non-bankruptcy forum, and the bankruptcy court correctly recognized that the interests of the Debtor and its creditors are best served by the bankruptcy court's ability to determine the issue in an expedited fashion. Incredibly, the City now argues that declining to hear the issue "will foster efficient administration of this case." A straight liquidation is in some sense always more "efficient" than a reorganization, but it hardly serves the policies of the Bankruptcy Code or the interests of the estate and its creditors to take that path.

<u>Burden on Bankruptcy Court's Docket /Length of Time to Conduct Hearing and Render Decision</u>: The bankruptcy court is undoubtedly in the best position to gauge the press of its own docket. Moreover, the issues raised in the Tax Objection should not inordinately consume the bankruptcy court's resources—the bankruptcy court has already scheduled time in early March for trial of this claim objection.

-14-

<u>Asset and Liability Structure</u>: Contrary to the City's assertion, the Debtor does not seek resolution of the Objection by the Bankruptcy Court simply to create a windfall for insiders. The fact is that, despite the City's attempts to cast doubt, the Debtor clearly has a number of legitimate third party unsecured creditors whose interests cannot be disregarded. Simply because a creditor is an attorney, or has a claim somehow relating to the property (not surprising in what is essentially a single asset case) does not justify disregarding that creditor's interests. Far from providing a windfall to insiders, only if the Debtor's Plan is confirmed (which requires a timely resolution of the Objection by the Bankruptcy Court) will legitimate creditors of the Debtor stand to maximize their recovery on their claims.

<u>Potential Prejudice to Debtor, Taxing Authority and Creditors</u>: Lack of a timely hearing and decision would thus result in tremendous prejudice to the Debtor and its creditors by destroying the ability to maximize recovery under the Plan. The City, on the other hand, can claim no countervailing prejudice to its position. It will receive its day in court, have access to all discoverable facts, and participate in a proceeding that will apply the very same substantive law that would apply in the state court proceeding it urges.

### III

### THE CITY'S REQUEST FOR A STAY PENDING APPEAL SHOULD BE DENIED

In addition to seeking leave to appeal, the City also requests that this Court grant a stay pending appeal. The City's only justification, however, for why a stay should be granted in this case is that it will be forced to incur additional litigation costs. This reason is not a legitimate justification for staying this action.

The factors regulating the issuance of a stay pending appeal are (1) whether the stay applicant has made a showing that success on the merits is likely; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) whether the public interest would be served by the granting of a stay. In re Bridgeport 132 B.R. 81, 83 (Bankr. D. Conn. 1991). A showing of probable irreparable harm is the most important prerequisite for the issuance of a stay. Under that test, the moving party must show that irreparable injury is likely before the other requirements will be considered. Id.

The City has not submitted any evidence that it will be irreparably harmed in this case. Instead, the City merely claims that it will be forced to incur additional litigation costs unless a stay is issued. Incurring litigation costs is not a sufficient justification for the issuance of a stay. In re First Alliance Mortgage Co., 264 B.R. 634, 656 (C.D. Cal. 2001); Lakehead Pipe Line Co., Inc. v. Investment Advisors, Inc., 900 F. Supp. 234, 236 (D. Minn. 1995) (incurrence of litigation expenses, without more, is not a type of irreparable harm supporting issuance of stay pending appeal); see, e.g., Davis v. Sheldon (In re Davis), 691 F.2d 176, 178 (3d Cir. 1982) (the cost, anxiety, and inconvenience of defending oneself do not constitute irreparable injury); In re McGraw, 18 B.R. 140, 142 (W.D. Wis. 1982) (even though debtor had no malpractice insurance, costs of defense insufficient prejudice); In re Harris, 85 B.R. 858, 860 (Bankr. D. Colo. 1988) (noting that no court has found that litigation costs alone justify continuation of the stay); In re Nkongho, 59 B.R. 85, 86 (Bankr. D. N.J. 1986) (rejecting debtor's claim that litigation expenses precluded modification of stay); In re Nicholas, Inc., 55 B.R. 212, 217-18 (Bankr. D. N.J. 1985) (same); Barlow v. Phillips (In re Phillips), 40 B.R. 194, 197 (Bankr. D. Colo. 1984) (same).

Conversely, the Debtor and its creditors will suffer irreparable harm if a stay is granted, because the City's objection must be resolved by May 27, 2005 to effectuate the

reorganization option under the Plan (or there will be a liquidation sale). A stay in this case will ensure that the Plan, which all parties, including the City, agreed upon, will fail.

As to the remaining factors (which the Court need not even consider given the lack of irreparable harm to the City), we demonstrate above that ultimate success in establishing an abuse of discretion is anything but "likely," and the City has identified no public policy that would justify the drastic relief it seeks. A stay in this case would be disastrous for all parties, and therefore, the City's request for a stay should be denied.

## CONCLUSION

WHEREFORE, the Debtors respectfully request, that the Court deny the City's motion for leave to appeal and deny its motion for a stay pending appeal, and grant such other and further relief as is just and proper.

IVEY BARNUM & O'MARA, LLC

_____
Melissa Zelen Neier, Esq.
Federal bar No. CT 25055
170 Mason Street
Greenwich, CT 06830
Phone: (203) 661-6000
Fax: (203) 661-9462
e-mail: mneier@ibolaw.com

Counsel to the Debtor

-and-

**STROOCK & STROOCK & LAVAN LLP**

Brian M. Cogan (BC-1876)
Admitted *Pro Hac Vice*
180 Maiden Lane
New York, New York 10038
Tel. (212) 806-5400
Fax: (212) 806-6006

Special Counsel to the Debtor

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT

IN THE MATTER OF Brittstarr Homes, Inc

DEBTOR(S)

CASE NO. 02-50811

ADV. NO.

DOC. # Boey.

CLAIM #

# SUBSTITUTION FORM

The attachments to this document were not imaged. If these attachments need to be reviewed and/ or copied, please refer to the original case file.

DEBORAH HUNT
CLERK OF COURT